IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF VIRGINIA

RICHMOND

FILED

AUG 17 2010

CLERK, U.S. DISTRICT COURT
RICHMOND, VA

| | |
|---|---|
| Mario Nathaniel Baker, | * |
| Petitioner, | * |
| vs. | * Case No. 3:08cr-0008 |
| | 08-4941 |
| UNITED STATES OF AMERICA, | * |
| Respondent. | * |

MEMORANDUM OF LAW IN SUPPORT OF MOTION UNDER

TITLE 28 U.S.C.§ 2255

<u>NOW COMES</u> the Petitioner, Mario Nathaniel Baker, pro se, and respectfully submit this Memorandum of law in support of his motion to pursuant to Title 28 U.S.C. § 2255 and in support thereto states to the court the following:

Statement of the Case

I. **The May 19, 2007 Incident**

On May 19, 2007, Officer Spencer Dean of the Richmond Police Department iniated a traffic stop of a vehicle. The driver of the vehicle eventually stopped, and Officer Dean testified that the driver exited the vehicle, and ran with a firearm in his hand. The driver was turned with his left side towards Dean. However, Dean was running while talking on his portable radio. Dean was unfamiliar with the as it was outside his precinct. Eventually, Dean lost sight of the suspect during the pursuit. The suspect that Dean initially identified exiting the vehicle was wearing a jacket, but when Baker was apprehended he was not wearing a jacket nor was he carrying a gun. Dean could only describe the jacket as "black."

The jacket that the suspect was seen wearing was never re-covered despite the fact that the officers brought several tracking

canines to the scene. Officer Dean described the distance between where the suspect exited the vehicle, and where Baker was apprehended as two blocks away. The area where Baker was apprehended is considered a high crime area known for firearm crimes.

A firearm was eventually recovered from the scene of the incident and examined for fingerprints, but no fingerprints were recovered from the firearm.

## II The March 3, 2008 Incident

On March, 3, 2008, Officer Shawn Nelson stopped Baker while he was driving a vehicle containing another passenger. Baker was stopped for a broken taillight. Officer Nelson asked Baker for his license and registration. An outstanding warrant came back for Bakers arrest. Officer Nelson did not arrest Baker until other officers arrived on the scene. Baker was escorted to the back of the vehicle where he was placed under arrest and put in handcuffs.

After officer Nelson passed Baker to another officer, he approached the passenger Dashawn Brown, and asked him to get out of the car. Brown stepped out of the car, and turned around to get his phone. Officer Nelson tackled Brown to the ground, and placed him in handcuffs. Heroin, cocaine, a scale, and a weapon were all recovered from his person.

No contraband or weapons whatsoever were recovered from Baker after his arrest. Baker was placed in one patrol car, and Brown was placed in another patrol car.

A search of the vehicle too place incidentally to arrest where a weapon was found in the glove compartment, and drugs were found in the center console.

Angie Cunningham testified for the United States as an expert

witness in the area of forensic biology DNA analysis. Ms. Cunningham testified that Baker was excluded as a contributor, but DaShawn Brown could not be eliminated as a contributor to the weapon found in the glove compartment.

## Course of the Proceeding

On April 1, 2008, Mario Nathaniel Baker was charged in a Superseding Indictment with several counts: Possession of a firearm by a convicted felon on May 19, 2007, in violation of 18 U.S.C.§ 922(g)(1) count (1); Possession with the intent to distribute heroin in violation of 21 U.S.C. § 841-count (2); Possession of a firearm by a convicted felon in violation of 18 U.S.C. § 922(g)(1)- count (4); and possession of a firearm in furtherance of a drug trafficking crime in violation of 18 U.S.C. § 924(c)- count (6).

Counts (2),(4), and (6) stemmed from a criminal complaint that was issued after the March 3, 2008 incident.

Baker filed a motion to sever, and a motion for a seperate trail of count (1). Baker's motion to sever count (1) was denied by the District Court on April 16, 2008.

On June 10, 2008, Baker was found guilty on all counts of the Superseding Indictment.

On September 12, 2008 the District court sentenced Baker to a total term of 185 months incarceration.

Baker was sentenced to 120 months on count (1) to run concurrent, 125 months on count (2) to run concurrent, 120 months on count (4) to run concurrent, and 60 months on count (6) to run consecutive to the other sentences imposed. Baker filed his Notice of Appeal on September 19, 2008.

Direct appeal was denied in an unpublished opinion on August 7, 2009 Rehearing was filed September 3, 2009 and later denied on

September 24, 2008

Petition for Certiorari was denied February 22, 2010.

### Argument

The instant Motion raises serious issues of constitutional importance, specifically the ineffective assistance of trail counsel. Petitioner argues that trial counsel was ineffective for not filing a pre-trial motion to suppress evidence, and he was ineffective for not preserving Petitioner's constitutional rights on appeal.

Petitioner also argues that appellate counsel was ineffective for not supplementing the new law <u>Arizona V. Gant</u>, 192 s. ct. 1710, 173 l. Ed. 2d. 485 (2009), and raising it properly on his direct appeal.

Petitioner should be granted relief under new law <u>Arizona V.Gant</u>.


A. Ineffective Assistance-failure to file a pre-trial motion to suppress evidence.

<u>Strickland V. Washington</u>, 466 U.S.668, 80 L.Ed. 2d. 674. The courts recognized that there's a two part test for determining whether a criminal defendant was denied the effective assistance of counsel: The defendant must demonstrate (1) that his counsel's performance fell below what could be expected of a reasonably competent practioner; and (2) that he was prejudiced by the substandard performance.

The first prong of Strickland is very clear on this argument. Trial counsel was deficient, because he did not file a pre-trial motion to suppress illegally obtained evidence on count(s): (2), (4), and (6) of the Superseding Indictment.

<u>Kimmelman V. Morrison</u>, 477 U.S.365,91 L.Ed.2d.305. A criminal defendant had raised a Fourth Amendment violation in a post conviction proceeding under and through ineffective assistance of counsel for failure to raise or properly litigate the claim.

-4-

In **Kimmelman**, his counsel told him the day of trial that the prosecution was using evidence of a sheet that was confiscated from his home by a police officer without a warrant.

His counsel never filed a motion of discovery, so he never knew about the sheet; therefore, he never filed a timeless motion to suppress the evidence obtained from a warrantless search.

Petitioner's situation is similar to **Kimmelman's**. His counsel allowed the courts to introduce evidence against him that was never put through the test of being the results of an illegal search and seizure.

**Chimel V. California**, 395 U.S.752,23L. Ed. 2d.685. When an arrest is made, it is reasonable for the arresting officer to search the person arrested in order to remove any weapon that the latter might seek to use in order to resist arrest or effect his escape, and to seize any evidence on the arrestee's person in order to prevent it's concealment or destruction, and to search the area into which an arrestee might reach in order to grab a weapon or evidentiary items.

Petitioner was pulled over for a traffic violation. The officer asked for his license and registration. Other officers arrived on the scene, and Petitioner was placed under arrest for an outstanding warrant. Petitioner was searched and nothing was found on his person. In **Chimel** it states that if an arrestee is in the area of the evidence he can conceal or destroy, the search that takes place incident to arrest is permissible.

Petitioner was placed in handcuffs and secured in the back of a patrol car, when the search of the vehicle took place. A weapon and drugs were the results of the warrantless search incident to arrest. This evidence brought about count(s):(2),(4),and (6) on the Superseding Indictment.

Petitioner wasn't able to conceal or destroy any evidence, and

he was definetly not in position to grab any weapon. The entire scene was secured. **Chimel** proves that this was an illegal search and seizure, and a violation of Petitioner's Fourth Amendment.

The second prong of Strickland, the Petitioner was prejudiced, because his counsel did not investigate the charges thoroughly to see if there actually was an illagal search and seizure, and also for not filing a motion to suppress.

If counsel would have filed a motion to suppress count(s) (2), (4) and (6) on illegal search and seizure, Petitioner would probably have his motion to suppress granted, and he would've received less time. If Petitioner would've lost, he could've pleaded out to an agreeable plea agreement. Lastly, he could've continued to argue it on his appeal.

Failure to file a motion to suppress was a violation of standard 4-3.6, Prompt Action to Protect the Accused, and constituted failure to raise a meritorios legal defense in his client's behalf. In addition, assuming that a motion to suppress would have been granted, Petitioner's constitutional rights were not observed throughout the proceedings.

Also, Petitioner's counsel was deficient for not filing a motion to suppress count(s): (1) and also count (4), because Petitioner's fingerprints did not match the weapon, and the weapons were not recovered from his person.

In **Kimmelman**, his trial counsel attempted to file a motion to suppress the evidence that the prosecution was using against him during trial, but the judge denied his claim, because he never filed a timeless motion to suppress.

Angie Cunningham (DNA Expert) for the goverment testified

that she dated her Certificate of Analysis April 14, 2008 (J.A.pg. 113 In 19- 20). Petitioner's trial was June 10, 2008, so Petitioner's counsel had plenty of time to receive this information.

Petitioner's counsel waited until the day of trial to tell him that his fingerprints weren't on the firearm, which shows ineffectiveness, because Angie Cunningham testified during trial that Petitioner's fingerprints weren't on the weapon in count(4), but his co-defendant's fingerprints were on the weapon (J.A. pg. 118 in 13-18)

Angie Cunningham testified that she dated her Certificate of Analysis April 14, 2008, so Petitioner's counsel had plenty of time to file a motion to suppress count(4) from the information Angie Cunningham testified to.

Petitioner's counsel never filed a motion to suppress count(s):(1) and (4) for lack of evidence before the trial. His counsel waited until after all the criminal evidence was introduced against his client at trial, and the trial was very close to being over, before he asked for a motion to have count(s): (1) and (4) dismissed for lack of evidence. In the Joint Appendix transcripts, Petitioner's counsel is arguing the lack of evidence on count (1). (J.A. pg. 189 In 6-17). Count (4) is being argued (J.A.pg. 191 In 5-19).

Petitioner's counsel showed the same ineffectiveness as **Kimmelman's** counsel. He tried to file a motion during trial instead of filing a motion to suppress before the trial.

Petitioner was prejudice, because he never had a chance to get the weapons dismissed. His counsel never filed a motion to suppress for lack of evidence before trial. If counsel would've filed this motion, Petitioner would've had both weapons dismissed or at least one weapon dismissed. If Petitioner would have had

count (4) dismissed, he never would've been charged with a 924(c), which was an extra five years to run consecutive.

Petitioner also claims that his counsel can not argue tactic or strategic reasons for not filing a motion to suppress.

**Washington V. United States**, U.S. Dist. Lexis 36097, Fourth Circuit (2008). Washington argued that his constitutional rights were violated when law enforcement searched his vehicle and residence. This argument he did not raise in District Court nor during direct appeal.

He was barred for two reasons: He pleaded guilty to the charges and waived non-jurisdictional defects, such as legality of the search, and his plea agreement included a waiver which prevents an appeal on collateral attack on the conviction except for claims of ineffective assistance of counsel, prosecutoral misconduct, or a sentence contrary to stipulations in the agreement.

Petitioner did not plead guilty and he has all of his appeal rights, because he did not waive them like **Washington**.

**Morris V. United States**, U.S. Dist. Lexis 89332 Fourth Circuit (2008). Morris ineffected assistance claim failed, because counsel's deliberate decision to minimize his client's exposure to additional charges, while attempting to secure a reduced sentence for substantial assistance, was a reasonable tactical choice, regardless of the fact that the motion to suppress may have been potentially meritorious.

Petitioner was superseded and went to trial on all charges involving the Superseding Indictment, so his counsel did not minimize any charges, so **Morris** doesn't apply in Petitioner's situation.

**Hillman V.United States** ,U.S. Dist. Lexis 14011

-8-

Fourth Circuit (2006). Hillman consented to the search, and his lawyer did not file a motion to suppress, because he thought the motion would have been fruitless.

When the arresting officers searched Petitioner's vehicle, there was no consent or drug sniffing dogs to allow the officers to search to vehicle without a warrant. Hillman doesn't apply to Petitioner's situation either.
Petitioner went to trial, and a motion to suppress is never fruitless when a defendant goes to trial.
Petitioner's counsel could not have said that it was in his clien's best interest. His client doesn't fit any of the criterias for saying a motion to suppress would have been frivolous.

Petitioner Went to trial on all charges, and was convicted all charges.

B. Ineffective Assistance- failure to preserve Petitioner's Constitutional rights on appeal.

The first prong of Strickland, Petitioner's trial counsel was deficient for not raising his Fourth Amendent rights before or during trial.

When trial counsel failed to raise a Fourth Amendent issue before or during trial for Petitioner, he wasn't able to raise that claim on his direct appeal. Petitioner feels that count(s): (2),(4),and (6) of the Superseding indictment were the results of a illegal search and seizures.

In Kimmelman, the Supreme Court was presented with a defendant who claimed ineffective assistance, because his counsel failed to litigate a Fourth Amendment claim, resulting in that claims default. There the court said: Where defense counsel's failure to litigate a .... claim compentently is the principal allegation of ineffectiveness.

Petitioner was granted a re-hearing and he argued that Count(s) (2),(4),and (6) were the results of a violation of his Fourth Amendment, but he was denied without reason.

Petitioner fully understands that his Fourth Amendment Claim wasn't raised on his first appeal, so the Court of Appeals is not bound to entertain any arguments that weren't presented on his first direct.

This is why Strickland applies to this argument, totally. Petitioner's counsel was deficient for not preserving his client's Fourth Amendment rights on appeal. This is why **Kimmelman's** argument was remanded.

When Petitioner's counsel chosed to default Petitioner's Fourth Amendment rights, he lost the opportunity to obtain direct review of that claim under the harmless-error standard which requires the goverment to prove that the defendant was not prejudiced by the error, by defaulting, counsel shifts the burden to his client to prove that there exists a reasonable probability that, absent his counsel's incompetence, he would not have been convicted.

The second prong of Strickland, Petitioner was prejudiced, because he has to argue this Fourth Amendment default on his "2255" instead of having the chance to argue this claim on his direct appeal, where he would've had Count(s): (2),(4),and (6) vacated and reversed on the grounds of illegal search and seizure.

C. Ineffective Assistance - Appelate counsel failed to supplement and raise intervening law **Arizona V. Gant**.

The first prong of Strickland, Petitioner asked appellate counsel to raise an argument for intervening law **Arizona V. Gant** in a supplement brief, but counsel failed to do so.

Petitioner's first brief was filed March 16, 2009 with the clerk's office, and the Government filed their brief April 22, 2009, with the clerk of court.

The intervening law **Arizona V. Gant** on was decided April 21, 2009. Petitioner wrote his counsel and told him to supplement this intervening law **Arizona V. Gant** on his direct review. Petitioner told his counsel to supplement this law well before the Court of Appeals made their decision.

When Petitioner received his answer for his appeal, noticed that it wasn't a decision involving the new intervening law **Arizona V. Gant**. Petitioner tried to contact his counsel without success to ask him why he did not add a supplemental brief.

Petitioner wrote the Clerk of Court, and explained to her that he wanted a rehearing, and Petitioner received an extension. When Petitioner finally got in contact with his counsel, his counsel told him that he was going to file a brief with the intervening law **Arizona Va Gant** on September 3, 2009.

When Petitioner received his rehearing brief, his counsel filed it under **Anders**. see **Anders V. California**, 368 U.S.738, 18 L. Ed.2d. 493. In the argument, Petitioner's counsel argued that the motion had merits, but the question his counsel presented was fatal to his rehearing. The question was "Did the District Court err in denying Mario Baker's motion to suppress in light of **Arizona V. Gant**". The question was fatal, because Petitioner never had a motion to suppress hearing at anytime, before or during his trial. Petitioner's appellate counsel was very ineffective to present this argument for this rehearing in that manner.

First, Petitioner's counsel filed his rehearing brief under

-11-

**Anders** saying that it had no merits. Secondly, he raised meritorious claims in his client's argument.

Thirdly, he raised a question that destroyed any chance his client had of receiving a rehearing.

These methods have proven that Petitioner's appellate counsel did not have his client's best interest at heart.

In **Gant** it states: Police may search the passenger compartment of a vehicle incident to a recent occupant's arrest only if it's reasonable to believe that the arrestee might access the vehicle at the time of the search or that the vehicle contains evidence of the offense of arrest.

Gant was handcuffed and secured in the back of a patrol car when officers searched his vehicle incident to arrest. The officers found a weapon and cocaine, because of this search. The United States Supreme Court held that this was an illegal search, Because the entire scene was secured. There were five officers at the scene and everyone was handcuffed in patrol cars. The Belton rule did not apply, because there was more than one officer and the scene was secured, See **New York V. Belton**, 453 U.S. 454, 69 L. Ed.2d.768.

Petitioner offenses on count(s): (2),(4), and (6) were the results of a search incident to arrest. Petitioner was handcuffed, and secured in the back of a patrol car, and there were four officers present at the scene, so the entire scene was secured. There was no search warrant.

Petitioner feels that he never had the opportunity to argue his case under Gant.

**Majette V. United States**, 326 Fed Appx 211, Fourth Circuit (2009). Majette had his conviction overturned on appeal, because of Gant. Majette was arrested for driving on a suspended license.

An officer searched Majette vehicle incident to arrest without a warrant, and recovered cocaine, marijuana, and scales. Majette was secured in a patrol car during this search. As you can see Petitioner's situation is also very similar to Majettes.

The second prong of Strickland, Petitioner was prejudiced, because he never had the chance to present the arguments for the intervening law **Arizona V. Gant** like Majette had his opportunity. Petitioner feels that if his counsel would've litigated this intervening law **Arizona V. Gant** when Petitioner told him, he would've had count(s): (2),(4), and (6) of the Superseding Indictment vacated and reversed, and he would've only had one charge left count(1), of the Superseding Indictment.

D. Petitioner should be granted relief under new intervening law **Arizona V. Gant**.

When this new law was decided April 21, 2009, Petitioner was on his direct review, and any intervening law is not retroactive. **Arizona V. Gant** is not retroactive law.

Petitioner's situation is just like Gant's. Respondent Gant was arrested for driving on a suspended license, handcuffed, and locked in a patrol car before officers searched his vehicle and found cocaine in a jacket pocket, and a weapon in the passenger compartment. The Arizona trial court denied his motion to suppress evidence, and he was convicted of drug offenses.

Reversing, the state Supreme Court distinguished **New York V. Belton**, which held that a police officer may search the passenger compartment of a vehicle, and any containers therein as comtemporaneous incident of a recent occupant's lawful arrest on the ground that it concerned the scope of the search incident to arrest, but did not answer the question whether officers may

conduct a search once the scene is secured. Because **Chimel**, requires that a search incident to arrest be justified by either the interest in officer safety or the interest perserving evidence, and the circumstances of Gant's arrest implicated neither of those interest, the State Supreme Court found the search unreasonable.

In contrast to Belton, which involved a single officer confronted with four unsecured arrestees, five officers handcuffed and secured Gant, and two other suspects in seperate patrol cars before the search began.

Petitioner was pulled over for a broken taillight. The officer asked for Petitioner's license and registration. As he was waiting, other officers arrived on the scene. It was four officers all together. The officer who pulled the vehicle for the taillight, approached the driver side and told Petitioner to step out of the vehicle, so he can show him the broken taillight. Petitioner walked the officer to the back of the vehicle where another officer was waiting.

The first officer grabbed Petitioner and told him he had an Outstanding Warrant for his arrest. Petitioner did not resist arrest as the officer placed him in handcuffs.

Afterwards, the passenger was placed in handcuffs and searched outside the vehicle, where the officers found a weapon, drugs, and scale on his person. Petitioner had nothing on his person.

Petitioner was placed in one patrol car, handcuffed and secured, and the passenger was placed in another patrol car, handcuffed and secured. The officers did a search incident to arrest of the vehicle and found a weapon and drugs. According to the new intervening law **Arizona V. Gant**, when there's an

arrest being made and there's more than one arresting officer, there can be no search of a vehicle without a warrant, if the entire scene is secured.

As you can see in Petitioner's situation, he was in one patrol car and the passenger was in another patrol car. They both were secured in handcuffs, so the search of the vehicle was an illegal search and seizure in light of **Arizona V. Gant**.

Most importantly, two other people were arrested with Gant, and they both had some type of criminal evidence on their person. Gant had nothing on his person, but he did have a warrant for his arrest just like the Petitioner.

In light of this intervening new law, Petitioner feels that he should be granted relief on count(s): (2),(4), and (6) of the Superseding Indictment. He strongly feels that these offenses should be reversed and vacated, because his situation is similar to Gant's.

### Conslusion

For the foregoing reasons, this Honorable Court should grant the Petitioner relief as requested and set-aside, vacate and/or correct his conviction. In the alternative, this Court may grant him an evidentiary hearing to further develop and establish the facts and arguments for review.

Respectfully Submitted,
*Mario M. Baker*
Mario N. Baker
Reg. No. 34194-183
FCI Gilmer
P.O. Box 6000
Glenville, W.V.23651

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF VIRGINIA

RICHMOND


Mario Nathaniel Baker,
    Petitioner,

vs.                                           Case No. 3:08-cr-0008
                                                        08-4941

United States of America
    Respondent.


### Affidavit of Mario Nathaniel Baker

Now Comes The Affiant, Mario Nathaniel Baker, who depose and say:

1. I am the Petitioner in the above reference case.

2. My attorney saw me on several occasions before trial, and he never discussed the ideal of filing a notion to suppress.

3. During one pretrial meeting, my attorney told me that my fingerprints weren't on the weapon in count (1), but the ballistic results weren't back on count(s): (2),(4), and (6). This pre-trial meeting took place well before my trial.

4. My attorney waited until the day of trial to tell me my fingerprints weren't on the weapon in count (4).

5. I wrote my attorney and told him to supplement the new intervening law <u>Arizona V. Gant</u> on my direct appeal before the Court of Appeals made their first decision.

    I declare (or certify, verify, or state), under penalty or perjury, that the foregoing is true and correct.

-1-

Exhibit A

Executed on this __12__ day of __August__, 20__10__.

_____
Mario N. Baker, Petitioner

Subscribe and Sworn To before me a Notary Public for said County and State. I do hereby certify that on this __12th__ day of __August__, 20__10__, that __Mario Baker__ the above mentioned, appeared before me and executed the foregoing. Witness my hand and seal:

_____
Notary Public

Name_____ Title_____
Authorized by Act of July 7, 1955
As Amended to Administer Oaths
(18 USC 4004)

My Commission Expires: _____

-2-

Exhibit A

**PRIORITY MAIL**
UNITED STATES POSTAL SERVICE

Any amount of mailable material may be enclosed, as long as the envelope is not modified, and the contents are entirely confined within the envelope with the adhesive provided as the means of closure.

**INTERNATIONAL RESTRICTIONS APPLY**

**4-POUND WEIGHT LIMIT ON INTERNATIONAL APPLIES**

Customs forms are required. Consult the *International Mail Manual* (IMM) at pe.usps.gov or ask a retail associate for details.

Flat Rate Mailing Envelope

Domestic and International Use

usps.com





From:
Baker # 34194-183
Federal Correctional Institution Gilmer
P.O. Box 6000
Glenville, W.V. 26351

To/Destinataire:

⇔34194-183⇔
Clerks Office
701 E. Broad St. Ste. 3000
Richmond, VA - 23219
United States

MARSHA[L]


