IN THE UNITED STATES DISTRICT COURT FOR THE

EASTERN DISTRICT OF VIRGINIA

Richmond Division

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | Criminal No. 3:08CR088 |
| | ) | |
| MARIO BAKER | ) | |

**OPPOSITION OF THE UNITED STATES TO PETITIONER'S MOTION TO VACATE JUDGMENT OF CONVICTION UNDER § 2255**

## Introduction

Petitioner alleges that his counsel was ineffective at trial for failing to object, through a motion to suppress, to the search of the car he was driving. Petitioner asserts that it was unlawful for police to conduct a warrantless search of an arrestee's car after the arrestee has been handcuffed or otherwise prevented from regaining access to the car. Petitioner asserts that because he was arrested, handcuffed and secured in a police car prior to the warrantless search of his car, his counsel was ineffective for failing to challenge the search. In support of his argument, petitioner primarily relies on the Supreme Court's decision in *Arizona v. Gant*, —U.S.—, 129 S.Ct. 1710 (2009), which was decided after he had been sentenced by the District Court.

Because an attorney's assistance is not rendered ineffective because he failed to anticipate a new rule of law, and because even if petitioner's attorney had made a motion to suppress it would have been unsuccessful, this Court should summarily deny Baker's motion to vacate his judgment of conviction.

**Procedural Background**

Mario Nathaniel Baker was indicted on four counts of a six-count indictment for possession of a firearm by a convicted felon, in violation of 18 U.S.C. § 922(g)(1); possession with intent to distribute heroin, in violation of 21 U.S.C. § 841; possession of a firearm by a convicted felon, in violation of 18 U.S.C. § 922(g)(1); and possession of a firearm in furtherance of a drug trafficking crime.

On June 9 and 10, 2008, Baker was tried before a jury and found guilty on all four counts. On September 12, 2008, Baker was sentenced by the Honorable Robert E. Payne to 185 months imprisonment, consisting of 120 months on Count One, 125 months concurrently on Count Two, 120 months concurrently on Count Four, and 60 months consecutively on Court Six. (J.A. 240-1). Baker timely filed his appeal after entry of the final order disposing of all matters in this case. Pursuant to 28 U.S.C. § 2255, Baker (petitioner) now collaterally attacks his conviction through a timely filed "Motion Under 28 § U.S.C. 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody," which was filed on

August 14, 2010. The United States now responds.

## Statement of Facts

<u>May 19, 2007 Offense</u>

In the early morning hours of May 19, 2007, Officer Spencer Dean of the Richmond City Police Department was on routine patrol when he noticed a red vehicle fail to stop at a stop sign. After following for a short distance, the officer activated his emergency lights. The vehicle began to slow and then rapidly accelerated away from the officer at a high rate of speed. (Joint Appendix for Appeal, hereinafter "J.A.", 20-21). The red vehicle failed to stop at three more stop signs as the officer pursued him. The vehicle then proceeded the wrong way down a one-way street. (J.A. 22-23). As the vehicle entered a Richmond housing project, the officer radioed dispatch that he believed the driver was preparing to bail out of the vehicle and run on foot. (J.A. 23). The officer stopped his vehicle behind the red vehicle, and observed a man exiting the driver's side of the car. (J.A. 24). The driver was identified as the defendant. (J.A. 25). As the defendant exited the vehicle, the officer observed a large, silver revolver in the defendant's hand. (J.A. 25, 29). The officer ordered the defendant to drop the weapon, but the defendant raised the firearm and pointed it at the officer. (J.A. 26-27). The officer nearly fired his weapon at the defendant in self-defense, but the defendant tripped

on a curb and fell. The defendant then ran from the officer. (J.A. 27). At one point during the pursuit, the defendant pivoted near the corner of a building and reversed direction in which he was running. (J.A. 30, 33). The officer pursued the defendant, but lost sight of him. (J.A. 28-32). Additional officers arrived on the scene and set up a perimeter around the area. (J.A. 31-33). The defendant eventually emerged from a wooded area and was apprehended by police. Officer Dean responded to the location of the apprehension and identified the defendant. (J.A. 32).

Richmond City Police Officer Amria Sleem was one of the officers that responded to Officer Dean's radio call. (J.A. 43). She heard Officer Dean shout "Drop the gun. Drop the gun." (J.A. 44). She described Dean's tone as very nervous and his voice as "shrieking." (J.A. 44-45). She also heard Dean's description during the radio call of the gun he observed as a "silver revolver." (J.A. 45). Sleem said Dean also provided a description of the clothing that the defendant was wearing. (J.A. 45). After she approached the defendant when he was apprehended, she placed her hands on the defendant's neck and felt his pulse racing. The defendant immediately fled from Officer Sleem but was quickly apprehended again. (J.A. 46, 47).

The defendant did not have the firearm in his possession when apprehended

by police. Police, using a canine unit, tracked the path of the officer's pursuit and assisted in the recovery of a Ruger .357 caliber revolver. (J.A. 33). Officer Dean located the firearm near the location where the defendant reversed direction during the pursuit. (J.A. 34). Officer Dean identified the gun he recovered as the weapon possessed by the defendant. (J.A. 34). The defendant's car was then searched and police recovered a digital scale, plastic baggies, and a roll of aluminum foil. (J.A. 35).

March 3, 2008 Offense

On March 3, 2008, an off-duty uniformed Henrico County Police officer observed a beige 1998 Ford Explorer with a non-operational brake light at the Essex Village Apartment complex in Henrico County, Virginia. (J.A. 79-81). The officer ran the vehicle's license plate, and it was reported that the vehicle's registration had expired in September 2007. (J.A. 79-80). The officer initiated a traffic stop, and the driver was identified as the defendant. (J.A. 80-81). The officer told the defendant why he stopped him and the defendant produced a summons issued to him earlier for the same offense. (J.A. 81). He also told the officer that it was his wife's car, and she was in the process of getting the plates switched to her son, to whom the car was registered. (J.A. 81). The defendant became very nervous and began sweating profusely. (J.A. 81). The passenger in

the defendant's vehicle would not make eye contact with the officer. (J.A. 81). The officer determined that there was an outstanding federal warrant for the defendant and waited for another officer to arrive on the scene. (J.A. 82).

Once the other officer arrived, the defendant and he was placed under arrest. (J.A. 84). The defendant was searched and no contraband was found. (J.A. 102). However, an officer located a cell phone, currency and cigarette rolling papers on the defendant. (J.A. 108).

The officer then asked the passenger of the vehicle, later identified as Dashawn Brown, to step out of the vehicle. Brown exited the vehicle and after he was told by an officer that he was going to be frisked for weapons, began to walk away from the officer. (J.A. 85). The officer frisked Brown and felt what he believed to be a weapon in Brown's right front pants pocket. (J.A. 85). The officer told Brown to place his hands on the vehicle. Brown, disregarding the officer's command, then moved his hands down and moved toward the inside of the vehicle. (J.A. 85-86). The officer grabbed Brown, who stated he was just trying to reach his cell phone, which was located on the front passenger floorboard of the vehicle. (J.A. 86). The officer yelled "gun" and took Brown to the ground and placed him in handcuffs. (J.A. 86). A search of Brown revealed a loaded .38 caliber revolver in his right front pants' pocket; .90 gram of heroin and .40 gram of

cocaine base in his right front pants watch pocket; and $980 in United States currency and a small digital scale in his left front pants pocket. (J.A. 86-88).

A search of the defendant's vehicle revealed a loaded .32 caliber revolver in the glove compartment, 20.72 grams of heroin .24 gram of cocaine base, 12.2 grams of methadone, and a burnt marijuana cigarette in the center console of the vehicle. (J.A. 89-93). Also in the vehicle were various documents bearing the defendant's name, including a traffic summons. (J.A. 91-92).

A forensic biology expert examined DNA taken from the hand rolled cigarette and the firearm found in the glove compartment of the defendant's vehicle and compared it to known DNA samples for the defendant and Brown. The expert determined that the defendant could be excluded as a source of the DNA on both items but that Brown could not. (J.A. 115-118).

The owner of the vehicle the defendant was driving on March 3, 2008, Kevin Roland, testified that his license was revoked in 2006, so he could not drive the vehicle. (J.A. 125). As a result, Roland gave the vehicle to his mother, who was in a relationship with the defendant. (J.A. 125-126). Roland denied that any of the items found in vehicle were his. (J.A. 126).

Steven Lohmann, an inmate at the Northern Neck Regional Jail, testified that he overheard the defendant in the jail talking about drug trafficking. (J.A. 128-

134). Specifically, the defendant told another inmate, nicknamed ATL, that whenever he would pick up or deliver drugs, he was "strapped." Lohmann said the term "strapped," meant to carry a gun. (J.A. 132).

The circumstances by which the contraband in the defendant's vehicle were found were consistent with an intent to distribute the drugs, according to Charles Beaumont, a Drug Enforcement Agency expert. (J.A. 148-167). Beaumont valued the heroin found in the vehicle to be worth approximately $4,800. Also relevant in Beaumont's determination were the facts that a digital scale, cell phones, and a large amount of cash were found in the car and on Brown's person. (J.A. 151). Beaumont said that narcotics' traffickers frequently bring another person with them for protection during narcotics transaction because they are inherently dangerous. (J.A. 153). Beaumont said the location of the firearms was relevant because they were easily accessible to either the defendant or Brown. Beaumont also said that while heroin can be packaged in plastic, as it was when located in the defendant's vehicle, it is also commonly packaged in aluminum foil. (J.A. 165).

The two cell phones recovered from the defendant and Brown were analyzed. (J.A. 156-162). One was registered to the defendant and the other was unregistered, but claimed by Brown. (J.A. Phone records were obtained from both phones. In the two hours preceding the traffic stop, records showed that the

two phones were in contact with one another nine times. (J.A. 159). In the two weeks preceding the traffic stop, the phones were in contact with one another approximately 80 times. (J.A. 159-160).

## Argument

### I. The Performance of Baker's Trial Attorney did not Violate the Sixth Amendment Right to Counsel

#### A. To establish ineffective assistance of counsel, a defendant must demonstrate that he was prejudiced by his lawyer's professionally unreasonable conduct.

In *Strickland v. Washington,* the Supreme Court established a two-part standard for evaluating claims of ineffective assistance of counsel. *See Strickland v. Washington*, 466 U.S. 668, 687-88 (1984). The first prong of the *Strickland* test addresses a counsel's professional competence. In that regard, "the defendant must show that counsel's representation fell below an objective standard of reasonableness." *Strickland*, 466 U.S. at 687-88. To meet this element, a defendant must demonstrate that, in light of all the circumstances as they appeared at the time of the conduct, "counsel's representations fell below an objective standard of reasonableness," i.e., "prevailing professional norms." *Id.*

When a reviewing court makes this determination, there is a strong presumption that counsel's conduct was within the wide range of reasonable professional assistance. *Id.* at 689-90. *Accord United States v. Terry,* 366 F.3d

312, 316-18 (4th Cir.), *cert. denied*, 543 U.S. 983 (2004); *Matthews v. Evatt*, 105 F.3d 907, 919 (4th Cir.), *cert. denied*, 522 U.S. 833 (1997.) In assessing whether a defendant has overcome this presumption, "the analysis of counsel's performance typically must be comprehensive; i.e., not narrowly limited to a review of counsel's failings." *See Strickland*, 466 U.S. at 689. The Supreme Court has cautioned that "[e]ven the best criminal defense attorneys would not defend a particular client in the same way." *Id.* The Court noted in particular that the reasonableness of a counsel's actions often depend on "informed strategic choices made by the defendant and on information supplied by the defendant." *Id.* at 691. The Constitution, in short, requires reasonably effective assistance under the circumstances, and not hypothetical perfection. *See White v. Singletary*, 972 F.2d 1218, 1220 (11th Cir. 1992) (stating that the test is not what the best lawyers would have done or what most good lawyers would have done, but only whether some reasonable attorney could have acted in the circumstances as this attorney did), *cert. denied*, 514 U.S. 1131 (1995). It must be remembered that a "[defendant] is entitled to a fair trial, but not a perfect one, for there are no perfect trials." *See McDonough Power Equipment, Inc. v. Greenwood*, 464 U.S. 548, 553 (1984).

To satisfy the second prong of the *Strickland* test, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional

errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *See Strickland*, 466 U.S. at 694. In other words, a defendant must affirmatively prove prejudice that is so serious as to have deprived him of a fair trial, a trial whose result is unreliable. *See Strickland*, 466 U.S. at 687, 693. The Fourth Circuit has labeled these two elements of the *Strickland* test as the "performance prong" and the "prejudice prong." *See Fields v. Attorney Gen. Of Md.*, 956 F.2d 1290, 1297 (4th Cir. 1992).

"Failure to make the required showing of either deficient performance or sufficient prejudice defeats the ineffectiveness claim." *Strickland*, 466 U.S. at 700. Because "[t]he defendant bears the burden of proving *Strickland* prejudice," if a defendant fails to meet this burden, "a reviewing court need not consider the performance prong." *See Fields*, 956 F.2d at 1297. *Accord Strickland*, 466 U.S. at 697; *Terry*, 366 F.3d at 315; and *Hutchins v. Garrison*, 724 F.2d 1425, 1430-31 (4th Cir. 1983).

***1. Because petitioner's counsel's performance fell well within the range of reasonably effective assistance, petitioner has failed to meet the "performance prong" under Strickland.***

Petitioner asserts that his counsel was ineffective for failing to file a motion to suppress with respect to the vehicle search on March 3, 2008.[1] In support, petitioner primarily relies on the holding of *Arizona v. Gant*, —U.S.—, 129 S.Ct. 1710 (2009).[2]

Baker was sentenced and a final judgment order was entered on September 17, 2008. In *Gant*, the Supreme Court held that "[p]olice may search a vehicle incident to a recent occupant's arrest only if the arrestee is within reaching distance of the passenger compartment at the time of the search or it is reasonable to believe the vehicle contains evidence of the offense of arrest." *Id*. at 1723. *Gant* was argued on October 7, 2008 and decided on April 21, 2009.

It is well-settled that counsel is not ineffective for failing to anticipate a change in the law. *See Kornahrens v. Evatt*, 66 F.3d 1350, 1360 (4th Cir. 1995) ("an attorney's assistance is not rendered ineffective because he failed to anticipate

---

[1]Petitioner makes no argument as to the search of a vehicle he was driving on May 19, 2007. Any such argument would likewise prove fruitless as the facts indicate that the weapon recovered was possessed by Baker outside of his vehicle, and later abandoned by Baker after a police pursuit.

[2]The Supreme Court has not made its holding in *Gant* retroactive to cases on collateral review. *See Tyler v. Cain*, 533 U.S. 656, 663 (2001)("[A] new rule is not 'made retroactive to cases on collateral review' unless the Supreme Court holds it to be retroactive."

a new rule of law"); *Randolph v. Delo*, 952 F.2d 243, 246 (8th Cir. 1991) (ruling that trial counsel was not ineffective for failing to raise *Batson* challenge two days before *Batson* was decided); *Johnson v. Armontrout*, 923 F.2d 107, 108 (8th Cir. 1991) ("counsel's failure to anticipate a change in existing law in not ineffective assistance of counsel"), *cert. denied*, 502 U.S. 831; *see also Engle v. Isaac*, 456 U.S. 107, 134 (1982) ("[T]he Constitution guarantees criminal defendants only a fair trial and a competent attorney. It does not insure that defense counsel will recognize and raise every conceivable constitutional claim.") Because petitioner's counsel's performance fell well within the range of reasonably effective assistance, petitioner argument fails to satisfy the "performance" prong.

***2. Petitioner's allegations that his counsel failed to file a motion to suppress also fail to satisfy the "prejudice" prong.***

Even if petitioner's counsel had made a motion to suppress, it would have been denied by the District Court under then-binding caselaw.[3] *See Thornton v. United States*, 541 U.S. 615, 621-24 (2004) (affirming search of vehicle based on arrest of "recent occupant," after he had exited the vehicle, affirming *United States v. Thornton*, 325 F.3d 189 (4th Cir. 2003)); *New York v. Belton*, 453 U.S. 454

[3]Indeed, the search of the vehicle likely would have been lawful under *Gant*, as officers, after they searched the passenger of Baker's vehicle, Dashawn Brown, and found heroin, cocaine base, cash, a digital scale and a weapon, and prevented Brown from reaching back into the vehicle, reasonably could have believed that additional contraband was located inside Baker's vehicle. *See Gant* at 1723.

(1981); *United States v. Bush*, 404 F.3d 263, 275-76 (4th Cir.) (applying *Belton* and *Thornton*, upholding vehicle search incident to arrest of "recent occupant"), *cert. denied* 546 U.S. 916 (2005); *United States v. Milton*, 52 F.3d 78, 80 (4th Cir. 1995) (search of vehicle incident to arrest); *United States v. George*, 971 F.2d 1113 (4th Cir. 1992) (same). A glove compartment is considered a "container" in the passenger compartment, and is therefore properly searched incident to lawful arrest under *Belton*. *Milton*, 52 F.3d at 80; *United States v. McCraw*, 920 F.2d 224, 228 (4th Cir. 1990).

Petitioner also argues that his counsel was deficient for not filing a motion to suppress "because Petitioner's fingerprints did not match the weapon, and the weapons were not recovered from his person." Such evidence did not support any basis for filing a motion to suppress. Indeed, petitioner acknowledges that evidence was presented at trial suggested he had not touched the weapons. However, petitioner incorrectly characterizes this evidence as "fingerprint" evidence, where testimony at trial actually came from a DNA expert, who testified that petitioner could be excluded from contributing to the DNA evidence recovered from the weapons, whereas his co-defendant, Dashawn Brown, could not be eliminated. Regardless, the testimony was presented to the jury and did not support any basis for a motion to suppress.

Therefore, petitioner's allegations also fail to satisfy the "prejudice" prong of the *Strickland* analysis.

**Conclusion**

For the above reasons, petitioner fails to meet the *Strickland* test to establish ineffective assistance of counsel by his counsel's failure to file a motion to suppress prior to his trial.

WHEREFORE, the government prays the petition for § 2255 relief will be dismissed.

Respectfully submitted,

NEIL H. MACBRIDE
UNITED STATES ATTORNEY

By: /s/

Michael A. Jagels
Virginia Bar Number: 38262
Special Assistant United States Attorney
Office of United States Attorney
600 East Main Street, Suite 1800
Richmond, Virginia 23219
Phone: 804-819-5400
Fax: 804-771-2316
michael.a.jagels@usdoj.gov

**CERTIFICATE OF SERVICE**

I hereby certify that on the 29th day of October 2010, I will electronically file the foregoing with the Clerk of Court using the CM/ECF system, which will then send a notification of such filing (NEF) to counsel of record.

I hereby certify that on the 29th day of October 2010, I will mail, via first-class mail, the foregoing to the petitioner:

Mario N. Baker
No. 34194-183
FCI Gilmer
P.O. Box 6000
Glenville, West Virginia 23651

By: ______/s/______________________

Michael A. Jagels
Virginia Bar Number: 38262
Special Assistant United States Attorney
Office of United States Attorney
600 East Main Street, Suite 1800
Richmond, Virginia 23219
Phone: 804-819-5400
Fax: 804-771-2316
michael.a.jagels@usdoj.gov