

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division**

UNITED STATES OF AMERICA

v.                                           Criminal No. 3:08cr88

MARIO N. BAKER

### ORDER

In accordance with the accompanying Memorandum Opinion, it is hereby ORDERED that:

1.  Baker's claims are DISMISSED WITH PREJUDICE;

2.  Baker's § 2255 Motion (Docket No. 82) is DENIED;

3.  Baker's Motion for Summary Judgment (Docket No. 88) is DENIED;

4.  The action is DISMISSED;

5.  A certificate of appealability is DENIED.

Baker is ADVISED that he may appeal the decision of this Court. Should he wish to do so, written notice of appeal must be filed with the Clerk of the Court within sixty (60) days of the date of entry hereof. Failure to file a timely notice of appeal may result in the loss of the ability to appeal.

The Clerk of the Court is DIRECTED to send a copy of this Order to Baker and counsel of record.

It is so ORDERED.

                                    /s/   REP
                           _____
                           Robert E. Payne
                           Senior United States District Judge

Date: February 23, 2012
Richmond, Virginia



September 24, 2008

Petition for Certiorari was denied February 22, 2010.

## Argument

The instant Motion raises serious issues of constitutional importance, specifically the ineffective assistance of trail counsel. Petitioner argues that trial counsel was ineffective for not filing a pre-trial motion to suppress evidence, and he was ineffective for not preserving Petitioner's constitutional rights on appeal.

Petitioner also argues that appellate counsel was ineffective for not supplementing the new law **Arizona V. Gant**, 192 s. ct. 1710, 173 l. Ed. 2d. 485 (2009), and raising it properly on his direct appeal.

Petitioner should be granted relief under new law **Arizona V.Gant**.


A. Ineffective Assistance-failure to file a pre-trial motion to suppress evidence.

**Strickland V. Washington**, 466 U.S.668, 80 L.Ed. 2d. 674. The courts recognized that there's a two part test for determining whether a criminal defendant was denied the effective assistance of counsel: The defendant must demonstrate (1) that his counsel's performance fell below what could be expected of a reasonably competent practitioner; and (2) that he was prejudiced by the substandard performance.

The first prong of Strickland is very clear on this argument. Trial counsel was deficient, because he did not file a pre-trial motion to suppress illegally obtained evidence on count(s): (2), (4), and (6) of the Superseding Indictment.

**Kimmelman V. Morrison**, 477 U.S.365,911.Ed.2d.305. A criminal defendant had raised a Fourth Amendment violation in a post conviction proceeding under and through ineffective assistance of counsel for failure to raise or properly litigate the claim.

Exhibit 1

In **Kimmelman**, his counsel told him the day of trial that the prosecution was using evidence of a sheet that was confiscated from his home by a police officer without a warrant.

His counsel never filed a motion of discovery, sohe never knew about the sheet; therefore, he never filed a timeless motion to suppress the evidence obtained from a warrantless search.

Petitioner's situation is similar to **Kimmelman's**. His counsel allowed the courts to introduce evidence against him that was never put through the test of being the results of an illegal search and seizure.

**Chimel V. California**, 395 U.S.752,23L. Ed. 2d.685. When an arrest is made, it is reasonable for the arresting officer to search the person arrested in order to remove any weapon that the latter might seek to use in order to resist arrest or effect his escape, and to seize any evidence on the arrestee's person in order to prevent it's concealment or destruction, and to search the area into which an arrestee might reach in order to grab a weapon or evidentiary items.

Petitioner was pulled over for a traffic violation. The officer asked for his license and registration. Other officers arrived on the scene, and Petitioner was placed under arrest for an outstanding warrant. Petitioner was searched and nothing was found on his person. In **Chimel** it states that if an arrestee is in the area of the evidence he can conceal or destroy, the search that takes place incident to arrest is permissible.

Petitioner was placed in handcuffs and secured in the back of a patrol car, when the search of the vehicle took place. A weapon and drugs were the results of the warrantless search incident to arrest. This evidence brought about count(s):(2),(4),and (6) on the Superseding Indictment.

Petitioner wasn't able to conceal or destroy any evidence, and

Exhibit 2

he was definetly not in position to grab any weapon. The entire scene was secured. **Chimel** proves that this was an illegal search and seizure, and a violation of Petitioner's Fourth Amendment.

The second prong of Strickland, the Petitioner was prejudiced, because his counsel did not investigate the charges thoroughly to see if there actually was an illagal search and seizure, and also for not filing a motion to suppress.

If counsel would have filed a motion to suppress count(s) (2), (4) and (6) on illegal search and seizure, Petitioner would probably have his motion to suppress granted, and he would've received less time. If Petitioner would've lost, he could've pleaded out to an agreeable plea agreement. Lastly, he could've continued to argue it on his appeal.

Failure to file a motion to suppress was a violation of standard 4-3.6, Prompt Action to Protect the Accused, and con-stituted failure to raise a meritorios legal defense in his client's behalf. In addition, assuming that a motion to suppress would have been granted, Petitioner's constitutional rights were not observed throughout the proceedings.

Also, Petitioner's counsel was deficient for not filing a motion to suppress count(s): (1) and also count (4), because Petitioner's fingerprints did not match the weapon, and the weapons were not recovered from his person.

In **Kimmelman**, his trial counsel attempted to file a motion to suppress the evidence that the prosecution was using against him during trial, but the judge denied his claim, because he never filed a timeless motion to suppress.

Angie Cunningham (DNA Expert) for the goverment testified

Exhibit 3

that she dated her Certificate of Analysis April 14, 2008
(J.A.pg. 113 In 19- 20). Petitioner's trial was June 10, 2008, so
Petitioner's counsel had plenty of time to receive this information.

Petitioner's counsel waited until the day of trial to tell
him that his fingerprints weren't on the firearm, which shows
ineffectiveness, because Angie Cunningham testified during trial
that Petitioner's fingerprints weren't on the weapon in count(4),
but his co-defendant's fingerprints were on the weapon (J.A. pg.
118 in 13-18)

Angie Cunningham testified that she dated her Certificate
of Analysis April 14, 2008, so Petitioner's counsel had plenty
of time to file a motion to suppress count(4) from the information
Angie Cunningham testified to.

Petitioner's counsel never filed a motion to suppress
count(s):(1) and (4) for lack of evidence before the trial. His
counsel waited until after all the criminal evidence was in-
troduced against his client at trial, and the trial was very close
to being over, before he asked for a motion to have count(s): (1)
and (4) dismissed for lack of evidence. In the Joint Appendix
transcripts, Petitioner's counsel is arguing the lack of evidence
on count (1). (J.A. pg. 189 In 6-17). Count (4) is being argued
(J.A.pg. 191 In 5-19).

Petitioner's counsel showed the same ineffectiveness as
**Kimmelman's** counsel. He tried to file a motion during trial
instead of filing a motion to suppress before the trial.

Petitioner was prejudice, because he never had a chance
to get the weapons dismissed. His counsel never filed a motion to
suppress for lack of evidence before trial. If counsel would've
filed this motion, Petitioner would've had both weapons dismissed
or at least one weapon dismissed. If Petitioner would have had

Exhibit 4

count (4) dismissed, he never would've been charged with a 924(c), which was an extra five years to run consecutive.

Petitioner also claims that his counsel can not argue tactic or strategic reasons for not filing a motion to suppress.

**Washington V. United States**, U.S. Dist. Lexis 36097, Fourth Circuit (2008). Washington argued that his constitutional rights were violated when law enforcement searched his vehicle and residence. This argument he did not raise in District Court nor during direct appeal.

He was barred for two reasons: He pleaded guilty to the charges and waived non-jurisdictional defects, such as legality of the search, and his plea agreement included a waiver which prevents an appeal on collateral attack on the conviction except for claims of ineffective assistance of counsel, prosecutoral misconduct, or a sentence contrary to stipulations in the agreement.

Petitioner did not plead guilty and he has all of his appeal rights, because he did not waive them like **Washington**.

**Morris V. United States**, U.S. Dist. Lexis 89332 Fourth Circuit (2008). Morris ineffected assistance claim failed, because counsel's deliberate decision to minimize his client's exposure to additional charges, while attempting to secure a reduced sentence for substantial assistance, was a reasonable tactical choice, regardless of the fact that the motion to suppress may have been potentially meritorious.

Petitioner was superseded and went to trial on all charges involving the Superseding Indictment, so his counsel did not minimize any charges, so **Morris** doesn't apply in Petitioner's situation.

**Hillman V.United States**, U.S. Dist. Lexis 14011

Exhibit 5

Fourth Circuit (2006). Hillman consented to the search, and his lawyer did not file a motion to suppress, because he thought the motion would have been fruitless.

When the arresting officers searched Petitioner's vehicle, there was no consent or drug sniffing dogs to allow the officers to search to vehicle without a warrant. **Hillman** doesn't apply to Petitioner's situation either.

Petitioner went to trial, and a motion to suppress is never fruitless when a defendant goes to trial.

Petitioner's counsel could not have said that it was in his clien's best interest. His client doesn't fit any of the criterias for saying a motion to suppress would have been frivolous.

Petitioner Went to trial on all charges, and was convicted all charges.

B. Ineffective Assistance- failure to preserve Petitioner's Constitutional rights on appeal.

The first prong of Strickland, Petitioner's trial counsel was deficient for not raising his Fourth Amendment rights before or during trial.

When trial counsel failed to raise a Fourth Amendent issue before or during trial for Petitioner, he wasn't able to raise that claim on his direct appeal. Petitioner feels that count(s): (2),(4),and (6) of the Superseding indictment were the results of a illegal search and seizures.

In **Kimmelman**, the Supreme Court was presented with a defendant who claimed ineffective assistance, because his counsel failed to litigate a Fourth Amendment claim, resulting in that claims default. There the court said: Where defense counsel's failure to litigate a .... claim compentently is the pr900ncipal allegation of ineffectiveness.

Exhibit 6

Petitioner was granted a re-hearing and he argued that count(s) (2),(4),and (6) were the results of a violation of his Fourth Amendment, but he was denied without reason.

Petitioner fully understands that his Fourth Amendment Claim wasn't raised on his first appeal, so the Court of Appeals is not bound to entertain any arguments that weren't presented on his first direct.

This is why Strickland applies to this argument, totally. Petitioner's counsel was deficient for not preserving his client's Fourth Amendment rights on appeal. This is why **Kimmelman's** argument was remanded.

When Petitioner's counsel chose to default Petitioner's Fourth Amendment rights, he lost the opportunity to obtain direct review of that claim under the harmless-error standard which requires the goverment to prove that the defendant was not prejudiced by the error, by defaulting, counsel shifts the burden to his client to prove that there exists a reasonable probability that, absent his counsel's incompentence, he would not have been convicted.

The second prong of Strickland, Petitioner was prejudiced, because he has to argue this Fourth Amendment default on his "2255" instead of having the chance to argue this claim on his direct appeal, where he would've had Count(s): (2),(4),and (6) vacated and reversed on the grounds of illegal search and seizure.

C. Ineffective Assistance - Appelate counsel failed to supplement and raise intervening law **Arizona V. Gant** .

The first prong of Strickland, Petitioner asked appellate counsel to raise an argument for intervening law **Arizona V. Gant** in a supplement brief, but counsel failed to do so.

Exhibit 7

1          (The jury is dismissed for the evening at

2     4:25 p.m.   They will return tomorrow at 9:30 a.m.)

3          THE COURT:  All right.  Mr. Montgomery, I

4     will hear your motion.

5          MR. MONTGOMERY:  Thank you, Your Honor.

6          Your Honor, with respect to Count One, that's

7     the May 19, 2007 possession of a firearm by a convicted

8     felon charge, Your Honor, I think the evidence, even

9     viewed in the light most favorable to the Commonwealth,

10    I don't think that a reasonable jury --

11         THE COURT:  Don't be calling this a

12    commonwealth.  It adds insult to injury.

13         MR. MONTGOMERY:  I'm sorry.  The evil trumps

14    the card.

15         I don't think the United States has proven

16    the case.  I don't think that a reasonable jury could

17    find that my client in fact possessed a weapon.

18         There was direct testimony that the suspect

19    that was found, my client, was found later did not

20    match the description of the suspect because the jacket

21    he was wearing was not found.

22         Your Honor, with respect to Count Two of the

23    indictment, again I think the evidence is insufficient.

24    I don't think a reasonable jury could find my client

25    guilty with intent to distribute heroin when all the

Exhibit 8

1   drugs were found -- well, most of the drugs were found

2   in the pocket of the co-defendant, and there was

3   evidence that --

4       THE COURT:   I thought the larger quantity was

5   in the console.

6       MR. MONTGOMERY:   It was, Your Honor, but the

7   investigating officer Nelson testified that he was

8   looking in when my client showed him the summons for

9   having expired tags.  And he says that he doesn't know

10  where my client got the summons from.  All the evidence

11  the United States has entered shows he kept all of his

12  personal documents in the center console.  When he

13  reached in there, the drugs would have been in plain

14  view of the officer.

15      Of course, when Mr. Dashawn Brown was

16  apprehended, he fought with the police.  I think the

17  evidence, even in the light most favorable to the

18  United States, Your Honor, does not prove a prima facie

19  case --

20      THE COURT:   Does that theory depend upon the

21  contention that they walked away, down to the back of

22  the car, had their backs to the front, and Brown stuck

23  it in there while Officer Nelson went looking?

24      MR. MONTGOMERY:   It does, Your Honor.

25      THE COURT:   Well, that may be true, but isn't

Exhibit 9

1  that something the jury has to decide?

2  MR. MONTGOMERY: Arguably, yes. It's our

3  position that a reasonable jury could not find it.

4  THE COURT: All right. I understand.

5  MR. MONTGOMERY: Your Honor, with respect to

6  Count Four and Count Six, those are two cases that --

7  well, they are basically the same. Possession of the

8  same firearm; one being on a convicted felon ground,

9  one being a drug trafficking fence.

10  For both counts, Your Honor, the evidence

11  shows, the DNA evidence from the United States, shows

12  that the gun was -- that my client was excluded as a

13  possible contributor to the DNA evidence, whereas, the

14  co-defendant could not be excluded. Furthermore, the

15  gun was found in the glove box in front of the

16  co-defendant.

17  Your Honor, I don't think a reasonable jury

18  without more could find that my client possessed that

19  firearm.

20  Further, Your Honor, I think that Count Six

21  is further compounded by the fact that not only was the

22  other person Dashawn Brown's DNA found on the gun, I

23  don't think there was any evidence that my client

24  possessed with intent to distribute heroin.

25  There's lots of evidence about where the

Exhibit 10

1  heroin was located, the amounts, the baggies, etc.,

2  that was brought out by Agent Beaumont.  I still think,

3  taking all of it together, Your Honor, the DNA shows

4  that the gun was actually possessed by someone else.  I

5  don't think a reasonable jury could find my client

6  guilty of that count.

7          And, Your Honor, I think that takes care of

8  all the counts.

9          THE COURT:  Either Count Four or Six?

10         MR. MONTGOMERY:  Four or Six, yes.

11         THE COURT:  Thank you.

12         MR. MONTGOMERY:  Thank you, Your Honor.

13         THE COURT:  Counts Four and Six, Mr. Jagels,

14  there's DNA evidence that excluded Mr. Baker, as I

15  understand the testimony.

16         MR. JAGELS:  Yes, sir, that is correct,

17  Judge; however, I think a reasonable juror or

18  reasonable jurors could still infer the joint

19  possession of the gun that was placed in the glove box,

20  and I think --

21         THE COURT:  How can they do that other than

22  him being in the presence of it?  What evidence is

23  there that a jury could put it in -- it's not joint

24  actual possession.  It's joint constructive possession.

25  So what evidence did the jury have to construe that

Exhibit 11

Petitioner's first brief was filed March 16, 2009 with the clerk's office, and the Government filed their brief April 22, 2009, with the clerk of court.

The intervening law **Arizona V. Gant** on was decided April 21, 2009. Petitioner wrote his counsel and told him to supplement this intervening law **Arizona V. Gant** on his direct review. Petitioner told his counsel to supplement this law well before the Court of Appeals made their decision.

When Petitioner received his answer for his appeal, noticed that it wasn't a decision involving the new intervening law **Arizona V. Gant**. Petitioner tried to contact his counsel without success to ask him why he did not add a supplemental brief.

Petitioner wrote the Clerk of Court, and explained to her that he wanted a rehearing, and Petitioner received an extension. When Petitioner finally got in contact with his counsel, his counsel told him that he was going to file a brief with the intervening law **Arizona Va Gant** on September 3, 2009.

When Petitioner received his rehearing brief, his counsel filed it under **Anders**. see **Anders V. California**, 368 U.S.738, 18 L. Ed.2d. 493. In the argument, Petitioner's counsel argued that the motion had merits, but the question his counsel presented was fatal to his rehearing. The question was "Did the District Court err in denying Mario Baker's motion to suppress in light of **Arizona V. Gant**". The question was fatal, because Petitioner never had a motion to suppress hearing at anytime, before or during his trial. Petitioner's appellate counsel was very ineffective to present this argument for this rehearing in that manner.

First, Petitioner's counsel filed his rehearing brief under

Exhibit 12

**Anders** saying that it had no merits. Secondly, he raised meritorious claims in his client's argument.

Thirdly, he raised a question that destroyed any chance his client had of receiving a rehearing.

These methods have proven that Petitioner's appellate counsel did not have his client's best interest at heart.

In **Gant** it states: Police may search the passenger compartment of a vehicle incident to a recent occupant's arrest only if it's reasonable to believe that the arrestee might access the vehicle at the time of the search or that the vehicle contains evidence of the offense of arrest.

Gant was handcuffed and secured in the back of a patrol car when officers searched his vehicle incident to arrest. The officers found a weapon and cocaine, because of this search. The United States Supreme Court held that this was an illegal search, Because the entire scene was secured. There were five officers at the scene and everyone was handcuffed in patrol cars. The Belton rule did not apply, because there was more than one officer and the scene was secured, See **New York V. Belton**, 453 U.S. 454, 69 L. Ed.2d.768.

Petitioner offenses on count(s): (2),(4), and (6) were the results of a search incident to arrest. Petitioner was handcuffed, and secured in the back of a patrol car, and there were four officers present at the scene, so the entire scene was secured. There was no search warrant.

Petitioner feels that he never had the opportunity to argue his case under Gant.

**Majette V. United States**, 326 Fed Appx 211, Fourth Circuit (2009). Majette had his conviction overturned on appeal, because of Gant. Majette was arrested for driving on a suspended license.

Exhibit 13

An officer searched Majette vehicle incident to arrest without a warrant, and recovered cocaine, marijuana, and scales. Majette was secured in a patrol car during this search. As you can see Petitioner's situation is also very similar to Majettes.

The second prong of Strickland, Petitioner was prejudiced, because he never had the chance to present the arguments for the intervening law **Arizona V. Gant** like Majette had his opportunity. Petitioner feels that if his counsel would've litigated this intervening law **Arizona V. Gant** when Petitioner told him, he would've had count(s): (2),(4), and (6) of the Superseding Indictment vacated and reversed, and he would've only had one charge left count(1), of the Superseding Indictment.

**D.** Petitioner should be granted relief under new intervening law **Arizona V. Gant**.

When this new law was decided April 21, 2009, Petitioner was on his direct review, and any intervening law is not retro-active. **Arizona V. Gant** is not retroactive law.

Petitioner's situation is just like Gant's. Respondent Gant was arrested for driving on a suspended license, handcuffed, and locked in a patrol car before officers searched his vehicle and found cocaine in a jacket pocket, and a weapon in the passenger compartment. The Arizona trial court denied his motion to suppress evidence, and he was convicted of drug offenses.

Reversing, the state Supreme Court distinguished **New York V. Belton**, which held that a police officer may search the passenger compartment of a vehicle, and any containers therein as comtemporaneous incident of a recent occupant's lawful arrest on the ground that it concerned the scope of the search incident to arrest, but did not answer the question whether officers may

Exhibit 14

{131 S. Ct. 2425} Not every court, however, agreed with this reading of *Belton*. In *State* v.{180 L. Ed. 2d 292} *Gant*, 216 Ariz. 1, 162 P. 3d 640 (2007), the Arizona Supreme Court considered an automobile search conducted after the vehicle's occupant had been arrested, handcuffed, and locked in a patrol car. The court distinguished *Belton* as a case in which "four unsecured" arrestees "presented an immediate risk of loss of evidence and an obvious threat to [a] lone officer's safety." 216 Ariz., at 4, 162 P. 3d, at 643. The court held that where no such "exigencies exis[t]" -- where the arrestee has been subdued and the scene secured -- the rule of *Belton* does not apply. 216 Ariz., at 4, 162 P. 3d, at 643.

lecases                                               **1**

© 2012 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

Exhibit 15

We have never relied on stare decisis to justify the continuance of an unconstitutional police practice. And we would be particularly loath to uphold an unconstitutional result in a case that is so easily distinguished from the decisions that arguably compel it. The safety and evidentiary interests that supported the search in Belton simply are not present in this case. Indeed, it is hard to imagine two cases that are factually more distinct, as Belton involved one officer confronted by four unsecured arrestees suspected of committing a drug offense and this case involves several officers confronted with a securely detained arrestee apprehended for driving with a suspended license. This case is also distinguishable from Thornton, in which the petitioner was arrested for a drug offense. It is thus unsurprising that Members of this Court who concurred in the judgments in Belton and Thornton also concur in the decision in this case.[10] <*pg. 500>

© 2012 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

Exhibit 16

S. NELSON - DIRECT

1  the car.

2  Q    That was Dashawn Brown?

3  A    That's correct.

4  Q    Did Mr. Brown give you identification?

5  A    Yes, he did produce an ID card.

6  Q    What did you do at that point?

7  A    At that point I went back to make sure he didn't

8  have any outstanding warrants.

9  Q    He did not at that time?

10  A    No.

11  Q    What did you do next?

12  A    Shortly after that the warrant was verified.

13  Q    On Mr. Baker?

14  A    That's correct.

15  Q    So what did you do with respect to Mr. Baker at

16  that point?

17  A    At that point I went back up and -- I wanted to

18  get him out of the car before I told him that he did

19  have an outstanding warrant.  So I asked him if he

20  wanted to come back and look at his brake light.  I had

21  Mr. Baker exit the vehicle, came back to the rear of

22  the car.  At that time I placed the handcuffs on him

23  and told him he was under arrest.

24  Q    Did you yourself take him to your car or did you

25  pass him off to another officer?

Exhibit 17

S. NELSON - DIRECT

1   A    At that point I immediately passed him off to

2   Officer Warren.

3   Q    What did you do next?

4   A    I went to deal with the passenger.

5   Q    You had already gotten his identification.  He had

6   no outstanding warrants.  What did you do with

7   Mr. Brown?

8   A    At that time I went up to the passenger side of

9   the vehicle.  I told Mr. Brown what was going on and

10  that I needed him to step out of the car.

11  Q    Did he comply?

12  A    He got out of the car.  I told him I was going to

13  frisk him for weapons, make sure he had no weapons on

14  him.  At that point he attempted to, best described,

15  walk away from me.

16  Q    What did you do?

17  A    At that point I stopped him, told him I needed him

18  to put his hands on the car, and I started to do a

19  frisk on his person.

20  Q    What if anything did you feel while you were doing

21  the frisk?

22  A    While I was frisking him, I felt what appeared to

23  be a weapon in his pocket.

24  Q    His right pocket?

25  A    Yes.

Exhibit 18

The Government filed a response. (Docket No. 85.) Baker has replied (Docket No. 86) and moved for summary judgment (Docket No. 88). The matter is ripe for disposition.

## I.  PROCEDURAL HISTORY

On March 3, 2008, Officer Shawn Nelson stopped a vehicle with a broken tail light. Baker was the driver of the vehicle and Dashawn Brown was Baker's passenger. During the stop, Officer Nelson discovered that an outstanding warrant existed for Baker's arrest. Officer Nelson handcuffed Baker, escorted him to the back of Officer Nelson's vehicle, and placed Baker in the custody of another law enforcement officer. Officers then searched Baker's person but did not find any contraband.

Officer Nelson next asked Brown to exit Baker's vehicle and Brown complied. Officer Nelson told Brown that he "was going to frisk [Brown] for weapons." (Trial Tr., June 9-10, 2008, 70:12-13.) "At that point [Brown] attempted to, best described, walk away from [Officer Nelson]." (Id. 70:14-15.) Officer Nelson, fearing that Brown had a weapon, tackled Brown and restrained him. A search of Brown's person revealed "a loaded .38 caliber revolver in his right front pants' [sic] pocket; .90 gram[s] of heroin and .40 gram[s] of cocaine base in his right front pants

Exhibit 19

(b) Although the search in this case turned out to be unconstitutional under *Gant*, Davis concedes that the officers' conduct was in strict compliance with then-binding Circuit law and was not culpable in any way. Under this Court's exclusionary-rule precedents, the acknowledged absence of police culpability dooms Davis's claim. Pp. 9-11.

lecases                                             1

© 2012 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

Exhibit 20

# IN THE UNITED STATES DISTRICT COURT

## FOR THE EASTERN DISTRICT OF VIRGINIA

### RICHMOND

Mario Nathaniel Baker,
    Petitioner,

vs.                                Case No. $3.08$-$cr$-$0008$
                                         08-4941

United States of America
    Respondent.

### Affidavit of Mario Nathaniel Baker

Now Comes The Affiant, Mario Nathaniel Baker, who depose
and say:

1. I am the Petitioner in the above reference case.

2. My attorney saw me on several occasions before trial, and
   he never discussed the ideal of filing a motion to suppress.

3. During one pretrial meeting, my attorney told me that my
   fingerprints weren't on the weapon in count (1), but the
   ballistic results weren't back on count(s): (2),(4), and (6).
   This pre-trial meeting took place well before my trial.

4. My attorney waited until the day of trial to tell me my
   fingerprints weren't on the weapon in count (4).

5. I wrote my attorney and told him to supplement the new in-
   tervening law **Arizona V. Gant** on my direct appeal before the
   Court of Appeals made their first decision.

    I declare (or certify, verify, or state), under penalty or
perjury, that the foregoing is true and correct.

-1-

**Exhibit A**

**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

———————

No. 08-4941

———————

UNITED STATES OF AMERICA,

        Plaintiff – Appellee,

    v.

MARIO NATHANIEL BAKER,

        Defendant – Appellant.

———————

Appeal from the United States District Court for the Eastern District of Virginia, at Richmond. Robert E. Payne, Senior District Judge. (3:08-cr-00088-REP-1)

———————

Submitted: July 15, 2009        Decided: August 7, 2009

———————

Before MOTZ and GREGORY, Circuit Judges, and HAMILTON, Senior Circuit Judge.

———————

Affirmed by unpublished per curiam opinion.

———————

W. Barry Montgomery, KALBAUGH, PFUND & MESSERSMITH, Richmond, Virginia, for Appellant. Peter S. Duffey, Assistant United States Attorney, Michael Jagels, Special Assistant United States Attorney, Richmond, Virginia, for Appellee.

———————

Unpublished opinions are not binding precedent in this circuit.

*Exhibit B*

**UNITED STATES OF AMERICA, Plaintiff - Appellee, v. ROBERT MEGGINSON, Defendant - Appellant.**
**UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT**
**340 Fed. Appx. 856;2009 U.S. App. LEXIS 19296**
**No. 07-4149**
**July 29, 2009, Submitted**
**August 12, 2009, Decided**

**Notice:**

**PLEASE REFER TO FEDERAL RULES OF APPELLATE PROCEDURE RULE 32.1 GOVERNING THE CITATION TO UNPUBLISHED OPINIONS.**

**Editorial Information: Prior History**

On Remand from the Supreme Court of the United States. (S. Ct. No. 07-6309).Megginson v. United States, 129 S. Ct. 1982, 173 L. Ed. 2d 1288, 2009 U.S. LEXIS 3471 (U.S., 2009)

**Disposition:**
VACATED AND REMANDED.

**Counsel**            Aaron E. Michel, Charlotte, North Carolina, for Appellant.

Gretchen C.F. Shappert, United States Attorney, Charlotte, North Carolina; Amy E. Ray, Assistant United States Attorney, Asheville, North Carolina, for Appellee.

**Judges:** Before TRAXLER, Chief Judge, and NIEMEYER and GREGORY, Circuit Judges.

**Opinion**

{340 Fed. Appx. 856} PER CURIAM:

Robert Megginson entered a conditional plea of guilty to possession of a firearm by a convicted felon, in violation of 18 U.S.C. § 922(g) (2006), reserving the right to challenge the district court's denial of his motion to suppress. Megginson was sentenced to 110 months in prison. On appeal, we affirmed the district court's denial of Megginson's motion to suppress and his conviction, because the prevailing law permitted an officer who had made a lawful custodial arrest of an occupant of a vehicle to search the passenger compartment of that vehicle. See New York v. Belton, 453 U.S. 454, 101 S. Ct. 2860, 69 L. Ed. 2d 768 (1981); Thornton v. United States, 541 U.S. 615, 124 S. Ct. 2127, 158 L. Ed. 2d 905 (2004). On May 18, 2009, the Supreme Court granted Megginson's petition for a writ of certiorari, vacated this court's judgment, and remanded to this court for further consideration in light of its recent {340 Fed. Appx. 857} decision in Arizona v. Gant, 129 S. Ct. 1710, 173 L. Ed. 2d 485 (2009), which addressed the search-incident-to-arrest exception to the warrant requirement of the Fourth Amendment. Finding that the vehicle search incident to Megginson's arrest was unreasonable under Gant, we vacate the district court's judgment and remand for further proceedings.

In Gant, the Supreme Court rejected the reading of Belton that predominated in the courts of

© 2011 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

appeals, that the Fourth Amendment "allow[s] a vehicle search incident to arrest of a recent occupant even if there is no possibility the arrestee could gain access to the vehicle at the time of the search." *Gant,* 129 S. Ct. at 1718. The Court held instead that "[p]olice may search a vehicle incident to a recent occupant's arrest only if the arrestee is within reaching distance of the passenger compartment at the time of the search or it is reasonable to believe the vehicle contains evidence of the offense of arrest." *Id.* at 1723. The Court further explained that "[w]hen these justifications are absent, a search of an arrestee's vehicle will be unreasonable unless police obtain a warrant or show that another exception to the warrant requirement applies." *Id.* at 1723-24.

In light of the Supreme Court's decision in *Gant,* the facts of this case do not justify the warrantless search of Megginson's car incident to his arrest. Therefore, the firearm seized from the vehicle should be suppressed. **Megginson** acknowledged to Officer Crooks that he was aware of the warrants against him. **Megginson** was cooperative, and was not engaged in other criminal behavior at the time of the stop. Crooks asked **Megginson** to step out of the car, he complied, she handcuffed him, searched his person, and then placed him in the back of the patrol car. After **Megginson** was removed from the car and secured, Crooks and another officer found and searched a bag in the back seat of Megginson's car. When asked at the suppression hearing the basis for the search, Officer Crooks responded "for officer's safety reasons and search incident to arrest."

Because **Megginson** was handcuffed and placed in the police vehicle before the search, he was not in reaching distance of the passenger compartment, and the contents of the bag could not have posed a threat to the officers' safety. Nor did the officers have reason to believe that the vehicle contained evidence of the offense of the domestic abuse for which **Megginson** was stopped. Accordingly, under *Gant,* the search incident to arrest was not justified, and the officers were required to obtain a warrant or show that another exception to the warrant requirement applies. No exception validates the search of Megginson's vehicle.

Accordingly, we vacate the judgment of the district court and remand for further proceedings. We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the court and argument would not aid the decisional process.

*VACATED AND REMANDED*

---

**PAUL WALLACE, Petitioner - Appellant, v. THE ATTORNEY GENERAL OF THE STATE OF MARYLAND; ROBERT KOPPEL, Respondents - Appellees, and JOHN A. ROWLEY, Respondent,**
**UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT**
**331 Fed. Appx. 207;2009 U.S. App. LEXIS 17746**
**No. 08-8434**
**July 29, 2009, Submitted**
**August 11, 2009, Decided**

---

**Notice:**

**PLEASE REFER TO FEDERAL RULES OF APPELLATE PROCEDURE RULE 32.1 GOVERNING THE CITATION TO UNPUBLISHED OPINIONS.**

**Editorial Informati**

A04CASES                                              2

© 2011 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

**UNITED STATES OF AMERICA, Plaintiff - Appellee, v. TONY MAJETTE, Defendant - Appellant.**
**UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT**
**326 Fed. Appx. 211; 2009 U.S. App. LEXIS 9267**
**No. 08-4427**
**January 30, 2009, Argued**
**April 30, 2009, Decided**

## Notice:

**PLEASE REFER TO FEDERAL RULES OF APPELLATE PROCEDURE RULE 32.1 GOVERNING THE CITATION TO UNPUBLISHED OPINIONS.**

### Editorial Information: Prior History

Appeal from the United States District Court for the Western District of Virginia, at Roanoke. (7:07-cr-00010-jct-1). James C. Turk, Senior District Judge.United States v. **Majette**, 2007 U.S. Dist. LEXIS 84923 (W.D. Va., Nov. 16, 2007)

### Disposition:

VACATED AND REMANDED.

**Counsel**                                ARGUED: Larry W. Shelton, Federal Public Defender, Roanoke, Virginia, for Appellant.

Jean Barrett Hudson, OFFICE OF THE UNITED STATES ATTORNEY, Charlottesville, Virginia, for Appellee.

ON BRIEF: Christine Madeleine Spurell, Research and Writing Attorney, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Roanoke, Virginia, for Appellant.

Julia C. Dudley, Acting United States Attorney, R. Andrew Bassford, Assistant United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Roanoke, Virginia, for Appellee.

**Judges:** Before WILKINSON, MICHAEL, and MOTZ, Circuit Judges.

## CASE SUMMARY

**PROCEDURAL POSTURE:** A federal grand jury indicted defendant on one count of possession with intent to distribute five grams or more of cocaine base, in violation of 21 U.S.C.S. § 841(a)(1) and (b)(1)(B). In the United States District Court for the Western District of Virginia, at Roanoke, a jury convicted defendant, and he was sentenced to 120 months in prison. Defendant appealed.As search of the vehicle was unreasonable, defendant's conviction was vacated. Vehicle's passenger compartment was not within defendant's reach at time of search and officer would not have had reasonable basis to believe he would find evidence of defendant's license suspension--the offense of arrest--within the vehicle's passenger compartment.

A04CASES                                              1

© 2012 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

**OVERVIEW:** Defendant argued that the search of the car violated the Fourth Amendment, that the government did not provide reasonable pretrial notice of its intent to offer evidence of other crimes or wrongs under Fed. R. Evid. 404(b), that the district court erred in its response to a jury question on the issue of intent to distribute a controlled substance, and that the evidence was insufficient to sustain his conviction. The evidence-producing automobile search incident to defendant's arrest for a driving offense turned out to be unlawful under the U.S. Supreme Court's opinion in Arizona v. Gant. Defendant was handcuffed and secured in the patrol car when a police officer searched defendant's vehicle and found the drugs. Thus, the vehicle's passenger compartment was not within defendant's reach at the time of the search. Moreover, the officer would not have had a reasonable basis to believe he would find evidence of defendant's license suspension--the offense of arrest--within the vehicle's passenger compartment. These circumstances, considered in light of Gant, required the appellate court to hold that the search of the vehicle was unreasonable.

**OUTCOME:** The appellate court vacated defendant's conviction and remanded for a new trial, if the government choose to have one. Because the appellate court concluded that a new trial was warranted due to the unlawful vehicle search, the appellate court declined for prudential reasons to consider the remaining issues.

### LexisNexis Headnotes

*Criminal Law & Procedure > Search & Seizure > Warrantless Searches > Vehicle Searches > General Overview*

New York v. Belton's (vehicle search) scope was limited by the safety and evidentiary justifications underlying the reaching-distance rule of Chimel v. California. Under Chimel, police may search incident to arrest only the space within an arrestee's immediate control, meaning the area from within which he might gain possession of a weapon or destructible evidence. With this explanation, Belton does not authorize a vehicle search incident to a recent occupant's arrest after the arrestee has been secured and cannot access the interior of the vehicle. Circumstances unique to the automobile context justify a search incident to arrest when it is reasonable to believe that evidence of the offense of arrest might be found in the vehicle.

### Opinion

{326 Fed. Appx. 212} PER CURIAM:

An evidence-producing automobile search incident to the arrest of Tony **Majette** for a driving offense turns out to be unlawful under the Supreme Court's new opinion in *Arizona v. Gant*, No. 07-542, 556 U.S.   , 129 S. Ct. 1710, 173 L. Ed. 2d 485, 2009 U.S. LEXIS 3120 (Apr. 21, 2009). We therefore vacate Majette's conviction for possession with intent to distribute cocaine base.

I.

**Majette** was stopped by a Blacksburg, Virginia, police officer on June 5, 2006, for driving a car (a Cadillac) with impermissibly dark window tint. When Officer Michael Czernicki, who made the stop, asked **Majette** for his driver's license and registration, **Majette** admitted that his license had been

© 2012 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

suspended. Officer Czernicki then checked with his dispatcher, who confirmed the license suspension and reported that **Majette** had three prior adult convictions for driving under a suspended license and fifteen prior suspensions of his driving privileges. Based on this information, Officer Czernicki decided to arrest **Majette** rather than issue a summons. The officer handcuffed **Majette** and secured him in the back seat of the patrol car. Thereafter, Officer Czernicki searched the passenger compartment of the stopped Cadillac. During the search he found two baggies containing cocaine base, one (with 20.7 grams) between the passenger seat and passenger door and one (with 2.2 grams) behind the passenger seat. The officer also found a Mason jar behind the driver seat that contained a tiny amount of a leafy substance that smelled like marijuana. Finally, the officer found a set of digital scales underneath the passenger seat.

On February 22, 2007, a federal grand jury indicted **Majette** on one count of possession with intent to distribute five grams or more of cocaine base, in violation of 21 U.S.C. § 841(a)(1) and § 841(b)(1)(B). Later, on October 23, 2007, **Majette** filed a motion to suppress the evidence (the cocaine base and scales) seized during the search of the Cadillac. Because **Majette** was detained for the misdemeanor offense of driving on a suspended license, he claimed that Officer Czernicki was required under Virginia Code § 19.2-74(A)(1) to issue a summons rather than place him under arrest. Thus, according to **Majette**, the car search was not incident to a lawful arrest. The district court first concluded that Majette's arrest was proper under § 19.2-74(A)(1)'s exception that authorizes an arrest when the officer reasonably believes the person detained is likely to disregard a summons. The court then held "the search of the Cadillac was lawful, incident to Majette's valid arrest." J.A. 68. The court relied on *New York v. Belton,* 453 U.S. 454, 101 S. Ct. 2860, 69 L. Ed. 2d 768 (1981), which it read broadly -- as did many courts, including ours -- to allow a vehicle search incident to the arrest of an occupant, even when the arrested occupant no longer had access to the passenger compartment. *See e.g., United States v. Coley,* No. 92-5061, 1992 U.S. App. LEXIS 32778, at *2-4 (4th Cir. Dec. 17, 1992) (concluding that *New York v. Belton* allowed police to search a defendant's vehicle after he was lawfully arrested during a traffic stop, handcuffed, and placed in a patrol car.).

**Majette** went to trial, and the government introduced the evidence of the items (the drugs and scales) discovered in the search of the Cadillac. The jury convicted **Majette**, and he was sentenced to 120 months in prison. **Majette** appeals, claiming, among other things, that the search of the car violated the Fourth Amendment.

{326 Fed. Appx. 213} II.

During oral argument on January 30, 2009, it was noted that this appeal might be controlled by the impending decision of the Supreme Court in *Arizona v. Gant,* No. 07-542, 129 S. Ct. 1710, 173 L. Ed. 2d 485, 2009 U.S. LEXIS 3120, an automobile search case with facts strikingly similar to those presented here. *Gant* was decided on April 21, 2009, and it does indeed control.

In *Gant* the Court clarified that *New York v. Belton's* (vehicle search) scope was limited by the "safety and evidentiary justifications underlying" the "reaching-distance rule" of *Chimel v. California,* 395 U.S. 752, 89 S. Ct. 2034, 23 L. Ed. 2d 685 (1969). *Gant,* No. 07-542, 556 U.S. , , 2009 U.S. LEXIS 3120 at *5 (Apr. 21, 2009). "Under *Chimel,*" the Court said, "police may search incident to arrest only the space within an arrestee's 'immediate control,' meaning 'the area from within which he might gain possession of a weapon or destructible evidence.'" *Id.* (quoting *Chimel,* 395 U.S. at 763). With this explanation, the Court held "that *Belton* does not authorize a vehicle search incident to a recent occupant's arrest after the arrestee has been secured and cannot access the interior of the vehicle." *Id.,* 2009 U.S. LEXIS 3120 at *5-6. The Court "also conclude[d] that circumstances unique to the automobile context justify a search incident to arrest when it is reasonable to believe that evidence of the offense of arrest might be found in the vehicle." *Id.,* 2009 U.S. LEXIS 3120 at *6.

A04CASES                                      3

© 2012 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

In this case **Majette** was handcuffed and secured in the patrol car when Officer Czernicki searched the Cadillac and found the drugs. Thus, the Cadillac's passenger compartment was not "within [Majette's] reach at the time of the search." *Id.,* 2009 U.S. LEXIS 3120 at *19. Moreover, the officer would not have had a reasonable basis to believe he would find evidence of Majette's license suspension -- the offense of arrest -- within the Cadillac's passenger compartment. *See, id.,* 2009 U.S. LEXIS 3120 at *20. These circumstances, considered in light of *Gant,* require us to hold that the search of the Cadillac was unreasonable. We therefore vacate Majette's conviction and remand for a new trial, if the government chooses to have one.

III.

**Majette** raises other issues in this appeal, claiming (1) that the government did not provide reasonable pretrial notice of its intent to offer evidence of other crimes or wrongs under Federal Rule of Evidence 404(b); (2) that the district court erred in its response to a jury question on the issue of intent to distribute a controlled substance; and (3) that the evidence was insufficient to sustain his conviction. Because we have concluded that a new trial is warranted due to the unlawful vehicle search, we decline for prudential reasons to consider the remaining issues.

*VACATED AND REMANDED*

A04CASES                                                    4

© 2012 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

```
┌─────────────────────────────────────────────────────────────────┐
│          173 LED2D 485, 556 U.S. _  ARIZONA v GANT               │
└─────────────────────────────────────────────────────────────────┘
```

**ARIZONA, Petitioner**

*vs.*

**RODNEY JOSEPH GANT**

## 556 US _, 129 S Ct _, 173 L Ed 2d 485, 2009 US LEXIS 3120

[No. 07-542]

**Argued October 7, 2008.**

**Decided April 21, 2009.**

### DECISION

Police held allowed, under Fourth Amendment, to search motor vehicle incident to recent occupant's arrest only if (1) arrestee was within reaching distance of passenger compartment at time of search, or (2) it was reasonable to believe that vehicle contained evidence of offense of arrest.

*Prior history:* 216 Ariz. 1, 162 P.3d 640, 2007 Ariz. LEXIS 73

### SUMMARY

*Procedural posture:* A trial court denied respondent's motion to suppress evidence seized from his car. Respondent was convicted of possession of a narcotic drug for sale and possession of drug paraphernalia. The Arizona Supreme Court reversed, finding that the search of respondent's car was unreasonable under the Fourth Amendment based on the search-incident-to-arrest exception. Petitioner State of Arizona petitioned for certiorari, which was granted.

*Overview:* After respondent was arrested for driving with a suspended license, handcuffed, and locked in the back of a patrol car, police officers searched his car and discovered cocaine in the pocket of a jacket on the backseat. The Court determined that the search-incident-to-arrest

© 2012 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

exception to the Fourth Amendment's warrant requirement did not justify the search because (1) police could not reasonably have believed that respondent could have accessed his car at the time of the search since the five officers outnumbered the three arrestees, all of whom had been handcuffed and secured in separate patrol cars before the officers searched respondent's car, and (2) police could not reasonably have believed that evidence of the offense for which respondent was arrested might have been found in the car since he was arrested for driving with a suspended license, an offense for which police could not expect to find evidence in the passenger compartment of his car. Also, the doctrine of stare decisis did not require adherence to a broad reading of <*pg. 486> Belton; the safety and evidentiary interests that supported the search in Belton simply were not present in the instant case.

*Outcome:* The Court affirmed the judgment of the state supreme court. 5-4 decision; 1 concurrence; 2 dissents.

© 2012 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.